**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay Dinsbach, Guardian on behalf of Alexis Gabrielle Dinsbach,<br><br>    Plaintiff,<br><br>v.<br><br>Candice Harris, et al.,<br><br>    Defendants. | No. CV-18-03595-PHX-GMS<br><br>**ORDER** |

Before the Court is Jay Dinsbach, Guardian on behalf of Alexis Gabrielle Dinsbach's ("Plaintiff") Motion for Attorneys' Fees and Related Non-Taxable Expenses (Doc. 190). For the following reasons, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

While Alexis Dinsbach ("Ms. Dinsbach") was a pretrial inmate at the Estrella Women's Jail in Maricopa County, Arizona, Candice Harris ("Defendant," or "Defendant Harris") used excessive force against her. At the time, Defendant was employed as a Detention Officer and supervised the dormitory where Ms. Dinsbach slept. On the morning of July 26, 2017, footage from several security cameras captured Defendant walking over to Ms. Dinsbach's bunk in the dormitory, reaching into the bunk, and repeatedly punching and kicking Ms. Dinsbach's head and body. Ms. Dinsbach suffered injuries and was taken

to a medical facility for treatment.

Ms. Dinsbach subsequently brought this action against Defendant, as well as Maricopa County and Sheriff Paul Penzone (together, "Defendants"). Her complaint alleged that Defendant Harris used unconstitutionally excessive force against her in violation of 42 U.S.C. § 1983, and that Defendants Maricopa County and Penzone were liable for Defendant Harris's actions on a variety of theories. (Doc. 1.) After screening and discovery, the Court granted summary judgment for Defendants Maricopa County and Penzone and dismissed Ms. Dinsbach's claims against them on the merits, and granted summary judgment in Ms. Dinsbach's favor on the issue of whether Defendant Harris used excessive force. (Doc. 138 at 20.)

On November 1, 2021, Ms. Dinsbach was placed in a guardianship by an Arizona court. (Doc. 161-1 at 9.). Subsequently, the Court granted Ms. Dinsbach's motion to substitute her guardian, Jay Dinsbach as the plaintiff in this action acting on her behalf. (Doc. 168.) After a trial solely on the issue of damages, a jury awarded Plaintiff a verdict of $180,000 in compensatory damages against Defendant Harris. (Doc. 180.) Plaintiff now seeks reasonable attorneys' fees and costs under 42 U.S.C. § 1988. (Doc. 190.)

**DISCUSSION**

**I.      Legal Standard**

As amended, the Civil Rights Attorney's Fees Awards Act of 1976 provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. A "plaintiff 'prevails' when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013). Such an alteration takes place when a plaintiff obtains "an enforceable judgment against the defendant from whom fees are sought." *Farrar*, 506 U.S. at 111.

To determine the amount of fees that a prevailing plaintiff is due, courts apply the lodestar method. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019). "Determining the lodestar amount is a 'two-step process.'" *Id.* (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016)). The court must first calculate the lodestar figure "by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly*, 822 F.3d at 1099. The number of hours reasonably expended on a case is determined by "considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "Reasonable hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

The lodestar figure reached through this process is "presumptively reasonable." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Nevertheless, in the second step of the lodestar method, courts may—in rare circumstances—consider whether the fee award should be adjusted upwards or downwards in light of the *Kerr* factors.[1] *Id.* Some *Kerr* factors are subsumed into the first step of the lodestar process and as a matter of law may not serve as independent bases for adjusting the fee award.[2] *Cunningham v. Cnty. of*

---

[1] The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales*, 96 F.3d at 363 n.8 (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

[2] These subsumed factors include "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained," *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), *vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989), "and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d at 364 n.9.

*Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).

## II. Analysis

### A. Prevailing Party

For purposes of § 1988, Plaintiff is a prevailing party because he obtained a judgment for money damages against Defendant. (Doc. 181.) "A judgment for damages in any amount" bestows prevailing party status on a plaintiff because it "modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money [she] otherwise would not pay." *Farrar*, 506 U.S. at 113.

That Plaintiff did not succeed on all claims against all Defendants, or that he obtained a smaller verdict than perhaps anticipated, is not relevant to determining whether Plaintiff is a prevailing party under § 1988. *See Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005). Even "a plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar*, 506 U.S. at 112. While the degree of a plaintiff's success remains relevant to determining the size of the fee award, it does not "affect the prevailing party inquiry." *Id.* at 114 ("Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award.'" (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989))); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" where a "plaintiff has achieved only partial or limited success"). Because Plaintiff has obtained an enforceable judgment against Defendant for $180,000, he is a prevailing party and eligible for reasonable fees.[3]

### B. Lodestar Calculation

Plaintiff seeks $302,268.50 in fees for work performed by five attorneys, two law clerks, and three paralegals over 1506.6 hours. (Doc. 191-1 at 12.) The Court will first

---

[3] Defendant argues no fees should be awarded because Defendant would not be able to pay a fee award. (Doc. 198 at 4.) While a plaintiff's ability to pay should be considered when a court awards fees in favor of a prevailing defendant, *see Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987), the Court is unaware of any authority suggesting that a defendant's ability to pay should be considered when a plaintiff is the prevailing party.

- 4 -

determine the reasonableness of Plaintiff's proposed rates, before assessing the reasonableness of the hours billed in light of the success obtained.

### 1. Reasonable Rate

In determining the reasonable hourly rate for attorneys and paralegals, the Court must assess the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community is the District of Arizona, "the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). As part of this inquiry, the Court must consider the experience, skill, and reputation of the attorney or paralegal in determining whether their billed rate is reasonable. *Gonzalez*, 729 F.3d at 1205–06. The fee applicant bears the burden of showing "that the rates he requests meets these standards." *Id.* at 1206.

Plaintiff's attorneys (and their rates) are as follows: Ms. Anita Rosenthal ($450 per hour), Mr. Steven Dawson ($450 per hour), Mr. Sander Dawson ($300 per hour), Mr. Aaron Dawson ($150 per hour as a law clerk and $300 per hour as an attorney), and Ms. Alexandra Dawson ($250 per hour). The law clerks are Ms. Vanessa Albert ($150 per hour) and Mr. Brendan Hughes ($150 per hour). Plaintiff's paralegal staff are identified as Ms. Sheri Sadler ($150 per hour), Mr. Steven Schubert ($150 per hour), and Ms. Carolina Johnson ($150 per hour). Plaintiff has provided the Court with declarations in support of each individual's timesheet, with information pertaining to their prior professional experience. Plaintiff has also produced a fee agreement signed by Plaintiff, his ward, and Mr. Sander Dawson. (Doc. 207.) There, Plaintiff agreed that if the Court were to award fees *against* Plaintiff, fees could be assessed at the following hourly rates: $500 per hour for Ms. Rosenthal and Mr. Steve Dawson, $399 per hour for all other attorneys, $125 per hour for paralegal support, and $50 per hour for "file handles and other support staff." (Doc. 207-1 at 2.) The Court will assess the reasonableness of each individual's rate in light of their experience, skill, and reputation to determine whether each rate is reasonable in the District of Arizona.

Ms. Rosenthal and Mr. Steve Dawson are the managing partners of Dawson &

Rosenthal, the law firm representing Plaintiff. While neither Ms. Rosenthal nor Mr. Dawson have substantial experience in § 1983 cases, they are seasoned plaintiffs' attorneys. Ms. Rosenthal has been licensed to practice in Arizona for forty-two years and has tried over thirty cases to verdict, primarily representing plaintiffs in bad-faith insurance litigation. She has previously handled a § 1983 excessive force case in Arizona. (Doc. 191-7 at 2.) Mr. Steven Dawson has been licensed to practice in Arizona for forty-one years and has tried approximately fifty cases to verdict. He has also previously handled a § 1983 excessive force case in Arizona. (Doc. 191-6 at 2.) Defendant does not object to their rate of $450 per hour. Moreover, their requested rate is $50 lower than what they represented to Plaintiff they would charge if the Court determined Plaintiff owed fees to Defendant. In light of their experience, skill, and reputation, and because Defendant does not object, the Court finds that their requested rate of $450 per hour is reasonable.

Mr. Sander Dawson was the attorney primarily responsible for litigating Mr. Dinsbach's claims against Ms. Harris. He has practiced law in Arizona for almost seven years and has handled two prior § 1983 cases. (Doc. 191-4 at 3.) As with Ms. Rosenthal and Mr. Steve Dawson, Defendant does not object to Mr. Sander Dawson's rate of $300 per hour. This rate is also $99 lower than what Plaintiff agreed to pay had Defendant obtained a fee award against Plaintiff. In light of the foregoing, the Court finds that Mr. Sander Dawson's rate of $300 per hour is reasonable when considering his experience, skill, and reputation.

Mr. Aaron Dawson appears to have charged two different rates throughout his representation of Plaintiff: $150 per hour in 2018, and $300 per hour starting in 2019. Defendant objects to his higher rate starting in 2019, as he has not adequately justified the increase. (Doc. 200-4 at 1.). Mr. Aaron Dawson states that while he has been licensed to practice law in California since 2012, he became licensed to practice law in Arizona only in January 2019. (Doc. 191-8 at 2.) According to Mr. Sander Dawson's declaration, Dawson & Rosenthal employs some attorneys who are not licensed to practice law in Arizona. (Doc. 191-4 at 4.) When these attorneys performed work for Plaintiff, they billed

their time as law clerks. *Id.* Mr. Aaron Dawson's timesheet shows that he billed his time at $150 per hour before he was licensed to practice in Arizona, and at $300 per hour after he became licensed to practice. This rate structure is consistent with the billing structure used for other non-admitted attorneys in this case, and reasonable in light of Mr. Aaron Dawson's experience, skills, and reputation.

Ms. Alexandra Dawson seeks a rate of $250 per hour. She has practiced law in Arizona for approximately six years, primarily in plaintiff-side civil litigation and bad faith insurance litigation. (Doc. 191-9 at 2.) Defendant does not object to her proposed rate, which is $149 lower than envisioned in the fee agreement. Consequently, the Court finds her proposed rate is reasonable in light of her experience, skills, and reputation.

Mr. Brendan Hughes and Ms. Vanessa Albert seek a rate of $150 per hour. Both Mr. Hughes and Ms. Albert are licensed to practice law in California, but not Arizona. Consequently, they have billed their time on this matter as if they were law clerks. (Doc. 191-10 at 2); (Doc. 191-11 at 2.) Defendant does not object to their proposed rate of $150 per hour, and the Court finds it reasonable.

Finally, Plaintiff seeks fees for the time expended by three paralegals on his case, at a rate of $150 per hour. Mr. Sander Dawson declares that each paralegal has over twenty-five years of experience. (Doc. 191-4 at 4.) However, according to Plaintiff's fee agreement, he agreed to compensate paralegal time at a rate of $125 per hour. (Doc. 207 at 2.) The Court will not award fees at a higher rate than what had been represented at the outset of the litigation. *See Alozie v. Ariz. Bd. of Regents*, No. CV-16-3944-PHX-ROS, 2021 WL 5578858, at *3 (D. Ariz. Nov. 30, 2021). Therefore, the Court will award paralegal fees at a rate of $125 per hour.

### 2. Reasonable Hours

The Court next considers the hours expended by Plaintiff's counsel and their staff to assess their reasonableness. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "Ultimately,

a 'reasonable' number of hours equals '[t]he number of hours . . . [which] could reasonably have been billed to a private client.'" *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno*, 534 F.3d at 1111). Hours "that are excessive, redundant, or otherwise unnecessary" are not compensable. *Hensley*, 461 U.S. at 434. And because the extent of the plaintiff's success is determined as part of the initial lodestar calculation, "the favored procedure is for the district court to consider" it in determining the "hours reasonably expended at a reasonable rate," rather than "in subsequent adjustments to the lodestar figure." *Gates*, 987 F.2d at 1403.

### a. Excessive, Redundant, and Unnecessary Hours

Plaintiff seeks compensation for 1506.6 hours of attorney, law clerk, and paralegal work. (Doc. 191-1 at 12.) In support, Plaintiff has submitted billing records for each attorney, law clerk, and paralegal. (Docs. 191-5; 191-6; 191-7; 191-8; 191-9; 191-10; 191-11; 191-12.) Defendant objects to specific entries by all but three individuals: Ms. Dawson, Ms. Sadler, and Mr. Schubert. (Docs. 200, 202, 203.)

As a preliminary matter, Plaintiff's argument that Defendant's objections are insufficiently particularized is not well taken. (Doc. 205 at 4.) The Local Rules require a responsive memorandum in opposition to a motion for fees to "separately identify each and every disputed time entry or expense item." LRCiv. 54.2(f). It is not enough for an objecting party to raise "a global the fees-are-excessive-type argument." *Delevin v. Holteen*, No. CV-12-00118-TUC-FRZ, 2016 WL 10721809, at *4 (D. Ariz. Apr. 26, 2016). Defendant's objections are sufficiently detailed: They pertain to specific time entries and identify the basis for each objection.[4]

### i. Unrelated Tasks in Single Entry

Defendant objects to 427.3 hours of billed time because Plaintiff's attorneys, law clerks, and paralegals submitted billing entries that corresponded to work performed on

---

[4] Defendant's primary objection is that Plaintiff's counsel seeks to be compensated for work performed litigating Plaintiff's claims against Maricopa County and Sheriff Paul Penzone, when those claims were dismissed on summary judgment and involved issues that Defendant did not herself raise. (Doc. 198 at 6.) The Court will address this objection in considering the degree of Plaintiff's success, *infra*.

several unrelated tasks.[5] Plaintiff has not challenged Defendant's claim that the entries at issue amount to impermissible block billing, nor has he argued that specific entries contain related tasks that may be permissibly block billed under the local rules. *See Pure Wafer, Inc. v. City of Prescott*, No. CV-13-8236-PCT-JAT, 2014 WL 3797850, at *5 (D. Ariz. July 29, 2014) (allowing block-billed entries that were sufficiently related to each other). Under the Local Rules, a party seeking fees must submit an "itemized account of the time expended" that details "[t]he time devoted to each individual unrelated task performed on such day." LRCiv 54.2(e)(1)(B). Having reviewed Plaintiff's billing records in their entirety, the Court agrees that most of the challenged entries do not comply with LRCiv 54.2(e)(1)(B). *(See, e.g.*, Doc. 191-12 at 4 (billing entry by Ms. Johnson seeking 5.5 hours for "Draft 6th Supplemental MIDP Response; review file; emails to and from team").) A billing entry that corresponds to work performed on several unrelated tasks does not aid the Court in its evaluation of whether the time performed on each specific task could have been reasonably billed to a private client. Therefore, the Court will apply a 20% reduction to block-billed hours, deducting as follows: 1.1 hours from Mr. Sander Dawson, 7.7 hours from Ms. Albert, 9.0 hours from Mr. Hughes, and 67.7 hours from Ms. Johnson. *See Rindlisbacher v. Steinway & Sons Inc.*, No. CV-18-01131-PHX-MTL, 2021 WL 2434207, at *12 (D. Ariz. May 26, 2021) (reducing specific block-billed entries by 20% for failure to comply with LRCiv 54.2(e)(1)(B)).

### ii.  Lack of Specifics

Defendant next objects to 65.3 hours of billed time on the grounds that the billing entries at issue are insufficiently specific under the local rules.[6] Local Rule 54.2(e)(2)

---

[5] Defendant seeks to exclude 5.4 hours of work billed by Mr. Sander Dawson, 38.5 hours of work billed by Ms. Albert, 45.0 hours of work billed by Mr. Hughes, and 338.4 hours of work billed by Ms. Johnson.

[6] 14.3 hours billed by Mr. Sander Dawson, 2.9 hours billed by Ms. Rosenthal, 9.1 hours billed by Ms. Albert, 30.4 hours billed by Mr. Hughes, and 8.6 hours billed by Ms. Johnson.
For Mr. Sander Dawson, Defendant challenges the following entries: 7/26/18 (0.7), 10/4/18 (1.2), 10/4/18 (1), 10/4/18 (0.8), 3/28/19 (0.2), 12/13/19 (0.5), 12/16/19 (0.5), 12/20/19 (0.1), 12/20/19 (0.1), 12/20/19 (0.1), 1/29/20 (0.5), 3/4/20 (0.2), 3/24/20 (0.1), 3/24/20 (0.1), 3/24/20 (0.1), 3/25/20 (0.1), 3/25/20 (0.1), 3/26/20 (0.1), 3/26/20 (0.1), 4/16/20 (0.1), 4/16/20 (0.1), 4/24/20 (0.2), 5/1/20 (0.1), 5/1/20 (0.1), 5/1/20 (0.1), 5/1/20 (0.1), 5/1/20 (0.1), 5/1/20 (0.1), 5/18/20 (0.1), 5/18/20 (0.1), 5/22/20 (0.1), 5/22/20 (0.1),

requires the moving party to "adequately describe the services rendered so that the reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2). The Rule states that telephone conferences must "identify all participants and the reason for the telephone call," LRCiv 54.2(e)(2)(A), and entries for legal research must "identify the specific issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research. Time entries simply stating 'research' or 'legal research' are inadequate and the court may reduce the award accordingly." LRCiv 54.2(e)(2)(B).

After an independent review of Plaintiff's attorney's billing records, the Court finds that most of the challenged time entries fail to comply with the specificity requirements of Local Rule 54.2(e)(2). Some challenged entries pertain to telephonic conferences or email messages that do not identify the purpose of the communication. For example, Mr. Sander Dawson's billing record contains entries with nonspecific descriptions like "Phone call with Expert,"[7] and "Email with defense counsel RE: Re: Dinsbach v. Maricopa County."[8] Other challenged entries pertain to legal research and the preparation of documents and pleadings, but do not identify the work performed with enough specificity for the Court to

---

5/28/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 6/30/20 (0.1), 11/30/20 (0.1), 12/7/20 (0.1), 12/7/20 (0.1), 12/16/20 (0.1), 12/16/20 (0.1), 4/19/21 (0.1), 4/21/21 (0.1), 4/21/21 (0.1), 5/20/21 (0.1), 5/20/21 (0.1), 5/21/21 (0.1), 6/17/21 (0.1), 6/18/21 (0.1), 6/29/21 (0.1), 6/29/21 (0.1), 7/12/21 (0.2), 7/12/21 (0.1), 7/12/21 (0.1), 7/19/21 (1), 7/23/21 (0.1), 7/23/21 (0.1), 10/25/21 (0.2), 11/15/21 (1), 11/23/21 (0.1), 11/23/21 (0.1), 11/23/21 (0.1), 11/24/21 (0.5), 12/2/21 (0.1), 12/3/21 (0.1), 12/3/21 (0.1), 12/6/21 (0.1). (Doc. 191-5.)
    For Ms. Rosenthal, the following entries are challenged: 7/19/21 (1), 10/15/21 (0.5), 11/15/21 (1), 11/29/21 (0.2), 12/14/21 (0.2). (Doc. 190-12.)
    For Ms. Albert, the following entries are challenged: 7/17/20 (2), 7/19/20 (0.5), 5/20/21 (1), 11/23/21 (2), 11/29/21 (0.2), 11/30/21 (0.4), 12/4/21 (2), 12/5/21 (1) (Doc. 190-14.)
    For Mr. Hughes, the following entries are challenged: 10/14/20 (1.18), 10/21/20 (3.03), 10/26/20 (3.3), 10/26/20 (0.23), 10/26/20 (1.5), 10/27/20 (1.35), 10/27/20 (0.17), 10/28/20 (3.68), 10/30/20 (0.18), 11/2/20 (0.43), 12/16/20 (2.97), 5/13/21 (0.67), 5/18/21 (0.62), 6/14/21 (2.32), 6/29/21 (0.75), 7/9/21 (1.07), 10/13/21 (1.12), 11/30/21 (0.18), 11/30/21 (1.7), 12/1/21 (2.25), 12/2/21 (0.75), 12/2/21 (0.9) (Doc. 190-8).
    For Ms. Johnson, the following entries are challenged: 6/30/20 (1.6), 8/21/20 (4.1), 7/21/21 (1.8), 10/13/21 (0.4), 10/14/21 (0.3), 10/18/21 (0.4). (Doc. 190-10).

[7]Billed 10/4/18 (1.0). (Doc. 191-5 at 2.)

[8] Billed 5/1/20 (0.1). (Doc. 191-5 at 10.)

assess the reasonableness of the time billed. As a representative example, Mr. Hughes's billing record contains an entry for "Research law for MSJ, compile in OneNote for outline review by Sander."[9] This entry makes clear that the research was conducted for Plaintiff's Motion for Summary Judgment against Defendant but does not identify the specific legal issue researched. However, not all challenged entries fail to comply with the Local Rules' requirements for specificity.[10] Therefore, while the Court will reduce the number of hours in the lodestar for Plaintiff's failure to comply with LRCiv 54.2(e)(2), it will only deduct the following hours: 13.3 hours from Mr. Sander Dawson, 1.2 hours from Ms. Rosenthal, 2.1 hours from Ms. Albert, 30.4 hours from Mr. Hughes, and 7.5 hours from Ms. Johnson. In total, the Court deducts 54.5 hours.

### iii. Travel

Mr. Sander Dawson's billing records reflect 7.2 hours charged for travel from San Diego, California to Phoenix, Arizona for court appearances and depositions.[11] Ordinarily, an attorney's travel time may be compensable if the travel is related to the client's case. *See, e.g.*, *Best Western Intern., Inc. v. Patel*, No. CV-04-2307-PHX-JAT, 2008 WL 544820, at *4 (D. Ariz. Feb. 26, 2008). While all relevant entries appear to be related to the case, Mr. Sander Dawson has not explained why travel *from* San Diego was necessary. Mr. Dawson states that he works "primarily out of" his firm's office in Sedona, Arizona. (Doc. 191-4 at 2.) Given his representations, the Court declines to consider his hours spent traveling from San Diego to Phoenix for case-related events in calculating the lodestar figure, as he did not bill for his time spent travelling from Sedona to Phoenix. Mr. Sander Dawson's hours are therefore reduced by 7.2 for purposes of the lodestar calculation.

---

[9] Billed 10/14/20 (1.18). (Doc. 191-10 at 5.)

[10] Challenged entries that are sufficiently specific are as follows: Ms. Rosenthal's billing entries dated 7/19/21 (1.0), 10/15/21 (0.5) and 12/14/21 (0.2); Ms. Albert's billing entries dated 7/17/20 (2.0), 11/23/21 (2.0), 12/4/21 (2.0), and 12/5/21 (1.0); and Ms. Johnson's entries dated 10/13/21 (0.4), 10/14/21 (0.3), and 10/18/21 (0.4). (Docs. 191-7, 191-11, 191-12.)

[11] The relevant billing entries are as follows: 1/24/19 (1.4), 12/1/19 (1.5), 12/1/19 (1.4), 1/20/20 (1.5), 1/20/20 (1.4). (Doc. 191-5)

### iv. Internal Meetings

Plaintiff's attorneys billed 66.9 hours for internal meetings, which Defendant challenges as excessive.[12] Generally speaking, it is reasonable for attorneys working on a case to meet regarding the "strategy and status of the current case." *Best Western*, 2008 WL 544820, at *4; *see also Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103–04 (N.D. Cal. 2008) (rejecting requested reduction for internal conferencing when "Defendants have provided no evidence or argument that any conference was excessive or duplicative"). Most of the meetings at issue took place in the weeks immediately preceding trial, and the Court generally declines to second-guess counsel's trial preparation strategy. Therefore, the Court will not disturb the bulk of the challenged entries. However, some specific entries warrant reduction. Mr. Sander Dawson and Ms. Albert both billed 3.0 hours on November 17, 2021 to discuss a Motion to Substitute, potential settlement discussions, to prepare exhibits for opposing counsel, and "various trial prep discussions." (Doc. 191-5 at 17); (Doc. 191-11 at 6.) The Court finds that the time billed for that meeting is excessive given the topics discussed and reduces both billed entries by 2.0 hours. The Court will also reduce Ms. Rosenthal's hours by 1.0 because it appears that she billed twice for a meeting held on May 21, 2021. (Doc. 191-7 at 5.) Finally, the Court will reduce Mr. Steve Dawson and Ms. Rosenthal's hours by 1.0 because it finds that two attorneys billing 1.6 hours each to discuss a Rule 35 examination is excessive.[13] Therefore, the Court deducts 7.0 hours for excessive meeting time: 2.0 hours from Mr. Sander Dawson, 2.0 hours from Ms. Rosenthal, 1.0 hour from Mr. Steve Dawson, and 2.0 hours from Ms. Albert.

---

[12] The relevant billing entries are as follows:
Mr. Sander Dawson's billing entries dated 5/21/21 (1.0), 7/9/21 (1.0), 11/17/21 (3.0), 11/26/21 (2.0), 11/27/21 (2.5), 11/28/21 (1.5), 11/28/21 (0.5), 12/2/21 (2.7), 12/3/21 (2.5), 12/4/21 (2.0), 12/4/21 (1.7), 12/5/21 (1.0), 12/5/21 (1.6), 12/6/21 (1.5), 12/6/21 (3.5), 12/8/21 (6.0) (Doc. 191-5); Ms. Rosenthal's billing entries dated 3/24/20 (1.6), 5/21/21 (1.0), 5/21/21 (1.0), 7/9/21 (0.5), 7/9/21 (1.0), 12/2/21 (2.7), 12/3/21 (2.5), 12/4/21 (1.7), 12/5/21 (1.6), 12/6/21 (1.5) (Doc. 191-7); Mr. Steve Dawson's billing entries dated 3/24/20 (1.6), 12/2/21 (2.7), 12/3/21 (2.5), 12/4/21 (1.7), 12/5/21 (1.6), 12/6/21 (1.5) (Doc. 191-6); Mr. Aaron Dawson's billing entry dated 12/14/21 (0.2) (Doc.191-8); and Ms. Albert's billing entry dated 11/17/21 (3.0) (Doc. 191-11).

[13] See billing entries dated 3/24/20 (Docs. 191-6, 191-7).

### v. Non-Case Related Billing

The Court will further reduce Ms. Johnson's hours for purposes of the lodestar because a significant amount of her billed time is not directly related to the civil case against Defendant Harris. According to the Court's calculations, Ms. Johnson billed 111.4 hours for tasks including attempting to locate Ms. Dinsbach and communicating and coordinating with attorneys working on her probate and criminal cases.[14] These entries are not properly charged against Defendant. Plaintiff does not provide a compelling justification why Defendant Harris should bear these costs. Therefore, the Court will exclude these entries from the lodestar calculation.

### vi. Other Objections

Finally, Defendant challenges 82.8 hours billed for work she claims is overbilled or unnecessary.[15] First, the Court will make reductions for hours billed by Mr. Sander Dawson, Ms. Albert, and Mr. Hughes for overbilling and unnecessary work performed.[16] These reductions total 29.0 hours. As for Ms. Johnson, the Court will reduce her hours by 27.0 for overbilling the following categories of tasks: (1) reviewing the Court's docket and preparing brief procedural motions, and (2) preparing deposition summaries.[17]

---

[14] The relevant billing entries are: 7/22/20 (2.4), 7/22/20 (1.2), 8/5/20 (4.2), 8/17/20 (2.5), 8/17/20 (0.4), 9/3/20 (2.2), 11/11/20 (0.8), 1/27/21 (1.5), 2/3/21 (0.6), 2/10/21 (0.5), 2/18/21 (0.4), 3/10/21 (0.9), 3/11/21 (1.6), 3/11/21 (1.5), 3/15/21 (1.1), 3/30/21 (1.4), 4/2/21 (0.4), 6/4/2002 (4.2), 6/8/21 (3.3), 6/10/21 (3.4), 6/10/21 (0.8), 6/13/21 (3.5), 6/15/21 (3.5), 6/15/21 (0.8), 6/17/21 (3.9), 6/20/21 (2.8), 6/21/21 (2.5), 7/7/21 (4.5), 7/14/21 (0.8), 7/14/21 (1.8), 8/1/21 (0.5), 8/3/21 (1.8), 8/5/21 (0.6), 8/6/21 (2.5), 8/9/21 (4.5), 8/13/21 (1.8), 8/13/21 (0.8), 8/16/21 (5.5), 8/17/21 (4.8), 8/17/21 (4.2), 8/17/21 (0.8), 8/18/21 (0.7), 8/18/21 (2.7), 8/19/21 (2.9), 9/11/21 (1.6), 9/13/21 (2.7), 9/28/21 (0.9), 9/29/21 (2.5), 10/15/21 (4.5), 10/25/21 (0.8), 12/11/21 (4.9) (Doc. 191-12).

[15] Challenges not addressed in this order are hereby overruled.

[16] For Mr. Sander Dawson, the following entries are deducted: 9/20/18 (3.6), 7/10/19 (0.4), 12/4/20 (8), 8/6/21 (0.5), 11/29/21 (0.4). For Ms. Albert, the following entry is reduced to 2.0: 12/8/21 (7.0). For Mr. Hughes, the following entries are deducted: 10/13/20 (2.48), 10/26/20 (1.9), 3/8/21 (1.02), 10/15/21 (0.47), 10/19/21 (0.32), 10/20/21 (0.75), 10/21/21 (1.67), 10/21/21 (2.5) (Docs. 191-5, 191-11, 191-10).

[17] Deductions are made from the following entries: 9/25/19 (0.2), 10/15/19 (0.2), 11/18/19 (0.4), 12/11/19 (0.2), 12/19/19 (0.2), 5/4/20 (0.5), 5/6/20 (0.3), 5/15/20 (0.2), 5/28/20 (0.2), 6/23/20 (0.2), 9/9/20 (0.4), 10/27/20 (2.8), 10/28/20 (0.2), 10/28/20 (2.4), 10/30/20 (4.5), 11/30/20 (3.2), 11/30/20 (1.5), 12/1/20 (0.4), 12/10/20 (0.3), 3/10/21 (3.2), 4/6/21 (0.6), 4/21/21 (0.3), 4/22/21 (0.3), 5/12/21 (0.5), 5/19/21 (0.6), 8/12/21 (0.5), 10/7/21 (5.9), 10/8/21 (5.8) (Doc. 191-12).

### vii. Preliminary Hours for Lodestar Calculation

Having made appropriate reductions to specific hourly entries, the Court determines the following hours will be used to preliminarily determine the lodestar figure.

| Name | Hours |
|---|---|
| Anita Rosenthal | 23.0 |
| Steve Dawson | 13.0 |
| Sander Dawson | 367.3 |
| Aaron Dawson | 10.5 (4.2 at $150 per hour; 6.3 at $300 per hour) |
| Alexandra Dawson | 26.9 |
| Vanessa Albert | 119.7 |
| Brendan Hughes | 264.3 |
| Sheri Sadler & Steven Schubert | 52.7 |
| Carolina Johnson | 307.8 |
| **TOTAL** | **1185.2** |

### b. Plaintiff's Success

Defendant also argues that Plaintiff should not be compensated for hours billed for work on claims against Defendants Maricopa County and Sheriff Penzone because the Court granted summary judgment on those claims. (Doc. 198 at 6.) "'[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees' under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting *Hensley*, 461 U.S. at 440). The Ninth Circuit applies a two-step process to determine whether a plaintiff's fee award should be reduced for limited success. First, the Court must consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. Claims are related "if either the facts *or* the legal theories are the same." *Webb*, 330 F.3d at 1169. If the successful and unsuccessful claims are related, or "it is impossible to isolate the truly unrelated claims from those related claims," *id.*, reductions for limited success should

- 14 -

instead be made at *Hensley*'s second step, which asks whether "the plaintiff achieve[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award," *Hensley*, 461 U.S. at 434.

### i. Relatedness of Claims

Plaintiff's complaint asserted four counts against three defendants. All four counts are related for purposes of *Hensley*'s first step. *See Webb*, 330 F.3d 1169. Count I sought damages for Defendant's use of excessive force against Ms. Dinsbach under 42 U.S.C. § 1983. (Doc. 1 at 10.) Count II sought to impose *Monell* liability against Defendants Maricopa County and Sheriff Penzone for Defendant Harris's use of excessive force under 42 U.S.C. § 1983. (Doc. 1 at 12.) In Count III, Plaintiff sought relief on a vicarious liability theory against the County and Sheriff Penzone for Defendant Harris's alleged negligence and battery. (Doc. 1 at 14.) And Count IV sought to recover against the County and Sheriff Penzone for their negligent hiring, training, and supervision of Defendant Harris. (Doc. 1 at 16.) All four counts arose out of a common factual background, namely Defendant Harris's use of excessive force against Ms. Dinsbach in Estrella Women's Jail. They are therefore related. *See Webb*, 330 F.3d at 1169 (determining the plaintiff's claims were related even though they asserted "numerous legal theories against several defendants" including a municipality because all claims "arose out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and prosecution").

### ii. Level of Success

Under *Hensley*'s second step, a fee award "must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009); *see Hensley*, 461 U.S. at 440. A plaintiff confers a meaningful public benefit when their suit "has affected a change in policy or a deterrent to widespread civil rights violations." *McCown*, 565 F.3d at 1105.

In this case, the jury awarded $180,000 in compensatory damages on a single claim. Looking back at the case, Plaintiff sued Defendants Harris, Penzone, and Maricopa County;

one count against Defendant Harris, and the remaining three asserted against Defendants Penzone and Maricopa County. (Doc. 1.) After screening, the Court permitted the case to go forward against all named Defendants. (Doc. 8.) At summary judgment, the Court denied Defendants Penzone and Maricopa County's Motion for Summary Judgment on the issue of whether Ms. Dinsbach was competent for purposes of Arizona's notice of claim statute, Ariz. Rev. Stat. § 12-821.01(A), (D), but granted their motion on the merits and dismissed Counts II, III, and IV. (Doc. 138 at 20.) The Court granted Plaintiff's Motion for Summary Judgment on Count I because Defendant Harris admitted that at least some of her kicks and punches to Ms. Dinsbach's head constituted excessive force. (Doc. 138 at 18–19.) On the first day of the trial set to determine the proper amount of damages, the Court granted Plaintiff's oral motion to dismiss his claim for punitive damages under Count I. (Doc. 187 at 1.) After closing arguments on the third day of trial, the jury deliberated for approximately two and one half hours before returning its verdict. (Doc. 189 at 1.)

Plaintiff did not obtain an excellent result in this case because most of the counts in his complaint were dismissed on the merits and he voluntarily dismissed his claim for punitive damages. Nor is the Court aware of any meaningful public benefit that arose from Plaintiff's action that warrants an award of a full fee. While it is true that every § 1983 damages award acts as a deterrent against misconduct to a certain degree, Plaintiff has not shown that his action resulted in any changes in policy or practice that make future rights violations of similar nature less likely. *Cf. Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (affirming district court's finding of excellent result when district court determined plaintiffs accomplished their mission to improve the disability determination system in Oregon through class action litigation).

Because Plaintiff obtained only limited success throughout the litigation, the Court will reduce the fee by 25%. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. Courts regularly reduce fee awards when a plaintiff brings multiple claims against several defendants but prevails only on one claim against a single defendant. *See*

*McCown*, 565 F.3d at 1104 (reducing plaintiff's award by 20% because he prevailed on only one of nine claims); *Webb*, 330 F.3d at 1169–70 (reducing plaintiff's award by 25% for limited success because he "initially sued several defendants, but prevailed against only one"). In reaching this determination, the Court is mindful of the costs associated with successfully litigating a § 1983 case to verdict and the important role § 1988 and its fee-shifting provisions play in attracting attorneys to prosecute civil rights cases. The 25% reduction is the result of the Court balancing these considerations against Plaintiff's limited success in litigating his case against all defendants named in his complaint.

### c. Final Lodestar Calculation

In light of the foregoing discussion, the Court calculates the lodestar amount as follows:

| Name | Proposed Hours | Hours Awarded | Rate Awarded | Tentative Fees | Reduced Fees |
|---|---|---|---|---|---|
| Anita Rosenthal | 26.2 | 23.0 | $450 | $10,350.00 | $7,762.50 |
| Steve Dawson | 14 | 13.0 | $450 | $5,850.00 | $4,387.50 |
| Sander Dawson | 403.8 | 367.3 | $300 | $110,196.00 | $82,647.00 |
| Aaron Dawson | 4.2 | 4.2 | $150 | $630.00 | $472.50 |
|  | 6.3 | 6.3 | $300 | $1,890.00 | $1,417.50 |
| Alexandra Dawson | 26.9 | 26.9 | $250 | $6,725.00 | $5,043.75 |
| Vanessa Albert | 136.5 | 119.7 | $150 | $17,955.00 | $13,466.25 |
| Brendan Hughes | 314.74 | 264.3 | $150 | $39,643.50 | $29,732.63 |
| Sheri Sadler & Steven Schubert | 52.7 | 52.7 | $125 | $6,587.50 | $4,940.63 |
| Carolina Johnson | 521.3 | 307.8 | $125 | $38,471.25 | $28,853.44 |
| **Total** | **1506.64** | **1185.2** |  | **$238,298.25** | **$178,723.70** |

### C. Nontaxable Expenses

Plaintiff also seeks reimbursement for $8,349.11 of nontaxable expenses incurred. Under § 1988, an award of attorneys' fees may include "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (9th Cir. 1987)). Plaintiff seeks reimbursement for (1) travel expenses, (2) deposition videographer fees, (3) online research expenses, (4) copies, postage, and delivery services, and (5) miscellaneous costs, including flash drives for delivery of Plaintiff's notice of claim, and a transcript of an interview with Defendant. (Doc. 191-3 at 2–3.) Defendant Harris objects to any award of nontaxable expenses, arguing that Plaintiff has not met his burden to show that the costs are those which are typically billed to clients in the local community. (Doc. 198 at 7.)

Because Mr. Sander Dawson has not justified why travel from San Diego was necessary for the case, *see supra* Part II.B.2.a.iii, the Court deducts $1063.94 from Plaintiff's nontaxable expenses. Otherwise, the Court finds that Plaintiff's expenses are reasonable, adequately documented, and would be typically billed to clients in the local community. The Court has adjudicated many fee and cost petitions, and finds that attorneys routinely bill their clients for these types of expenses. *See, e.g.*, *Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1017–20 (D. Ariz. 2007) (allowing prevailing party to recover costs expended on meals, videotaped depositions, copying expenses, electronic legal research expenses, postage, messenger services, mileage, cab fare, parking, and Pacer fees). Plaintiff is awarded $7285.17 in nontaxable expenses.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorneys' Fees and Related Non-Taxable Expenses (Doc. 190) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is awarded **$178,723.70** in attorneys' fees and **$7285.17** in related nontaxable expenses, for a total award of **$186,008.87**.

**IT IS FURTHER ORDERED** deeming all filings related to Plaintiff's Motion for Attorneys' Fees and Related Non-Taxable Expenses (Doc. 190), including Plaintiff's Notice of Errata (Doc. 191), Defendant's Response (Doc. 198), the exhibits to Defendant's Response (Docs. 199, 200, 202, 203), and Plaintiff's Reply (Doc. 205) as timely filed.

Dated this 11th day of March, 2022.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge